Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 N. Cave Creek Road, Suite 101
Phoenix, AZ 85024

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff James Osuna*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| James Osuna,<br><br>      Plaintiff,<br><br>  v.<br><br>Prudential Insurance Company of America, U.S. Airways, Inc., U.S. Airways, Inc. Employee Disability Plan,<br><br>      Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff James Osuna (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

*Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa, Arizona.

3. Upon information and belief, Defendant U.S. Airways, Inc. (hereinafter referred to as the "Company") sponsored, subscribed to and administered a group long term disability insurance policy, which was fully insured and administered by Prudential Insurance Company of America (hereinafter referred to as "Prudential"). The specific Prudential long term disability policy is known as Group Policy 46566. The Company's purpose in subscribing to the Prudential policy was to provide disability insurance for its employees. Upon information and belief, the Prudential policy may have been included in and part of the U.S. Airways, Inc. Employee Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to Prudential. Plaintiff believes that as it relates to his claim, Prudential functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5. Upon information and belief, Plaintiff believes Prudential operated under a conflict of interest in evaluating his claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* Prudential's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.[1]

---

[1] "A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also

-2-

6.     The Company, Plan and Prudential conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

*Venue*

7.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

8.     Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits he may be entitled to as a result of being found disabled.

9.     After working for the Company as a loyal employee, Plaintiff became disabled on or about March 29, 2010 due to serious medical conditions and was unable to work in his designated occupation as a Tour Sales Representative. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

10.    Following his disability, Plaintiff applied for long term disability benefits under the relevant Prudential Policy. Upon information and belief, the Company did not provide a short term disability plan and/or policy. The relevant long term disability policy provides the following definition of a covered disability which applies to Plaintiff's claim:

> You are disabled when Prudential determines that:
> 1.     you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

---

exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

-3-

    2.    you are under the regular care of a doctor; and

    3.    you have a 20% or more loss in your monthly earnings due to that sickness or injury.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:

    1.    you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and

    2.    you are under the regular care of a doctor.

11. In support of his claim for long term disability benefits, Plaintiff submitted to Prudential medical records from his treating physicians supporting his disability as defined by the relevant Prudential policy.

12. Prudential notified Plaintiff in a letter dated January 10, 2011 that his claim for long term disability benefits had been denied.

13. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the January 10, 2011 letter denying his claim for long term disability benefits and in support of his appeal Plaintiff submitted additional medical and vocational evidence demonstrating he met any definition of disability set forth in the relevant policy.

14. In support of his appeal, Plaintiff submitted to Prudential a narrative letter dated July 7, 2011 from his current treating board certified internist who opined, "It is my professional opinion that [Plaintiff's] current medical problems are not likely to improve significantly over time, and thus, are considered permanent disabilities."

15. In support of his appeal, Plaintiff also submitted to Prudential a May 27, 2011 Functional Capacity Evaluation Report authored by a physical therapist who after evaluating Plaintiff for a number of hours concluded, "Based on a reasonable degree of

medical certainty, my opinion is [Plaintiff] would not be able to perform *sedentary work* consistently on a regular, full-time basis" (original emphasis).

16. Further supporting his appeal, Plaintiff submitted to Prudential a vocational report from a certified vocational expert dated August 22, 2011. The vocational expert concluded, "From a vocational standpoint, it is unmistakable that [Plaintiff] is not able to engage in any work related activities."

17. As part of its review of Plaintiff's claim for long term disability benefits, Prudential only obtained a medical records only paper review of Plaintiff's claim from an external physician whose name was never disclosed to Plaintiff (hereinafter referred to as the "peer reviewer").

18. Upon information and belief, Plaintiff believes the peer reviewer retained by Prudential to conduct a review of his claim may be a long time consultant for the disability insurance industry. Plaintiff believes the peer reviewer may have an incentive to protect his or her own consulting relationships with the disability insurance industry and Prudential by providing medical record only reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

19. In a letter dated September 13, 2011, Prudential notified Plaintiff it had denied his claim and appeal for long term disability benefits under the Prudential policy. In the letter, Prudential also notified Plaintiff that he had completed the first level of appeal and could file a lawsuit pursuant to ERISA.

20. In evaluating Plaintiff's claim on appeal, Prudential had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in his best interests and other participants" which it failed to do. [2]

21. Plaintiff believes Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate his claim; failing to have him examined by a medical professional; providing a one sided review of his claim that failed to consider all evidence submitted by Plaintiff and/or de-emphasized medical evidence which supported Plaintiff's disability; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the combination of those diagnoses and impairments; failing to engage Plaintiff in a dialogue so he could submit the necessary evidence to perfect his claim and failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in any occupation.

22. As referenced, Prudential failed to adequately investigate Plaintiff's claim and failed to engage Plaintiff and/or his treating physicians in a dialogue during the appeal of his claim with regard to what evidence it believed was necessary so Plaintiff could perfect his claim. Prudential's failure to investigate the claim and to engage in this dialogue or to

---

[2] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason he did not receive a full and fair review.

23. Plaintiff further believes the reason Prudential provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Prudential undertook as decision maker and payor of benefits which created an inherent conflict of interest. Due to its conflict of interest, when Prudential denied Plaintiff's long term disability claim it saved a significant sum of money.

24. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Prudential and any individual who reviewed his claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Prudential's decision to deny his claim.

25. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo,* because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Defendants as referenced herein are so flagrant they justify *de novo* review.

26. As a direct result of Prudential's decision to deny Plaintiff's disability claim he has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits he may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

27. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

28. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for losses he incurred as a result of Defendants' unjustified denial of his claim.

1   WHEREFORE, Plaintiff prays for judgment as follows:

2   A. For an Order finding Plaintiff meets any definition of disability in the Prudential policy and requiring Defendants to pay Plaintiff disability benefits and any other employee benefits he may be entitled to as a result of being found disabled pursuant to the Prudential policy from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon, as well as any other employee benefits he may be entitled to from the Plan and/or Company as a result of being found disabled;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time he meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 2nd day of November, 2011.

SCOTT E. DAVIS. P.C.

By:  */s/ Scott E. Davis*
     Scott E. Davis
     Attorney for Plaintiff